25CA1770 Peo in Interest of IAM 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1770
Boulder County District Court No. 24JV30028
Honorable J. Chris Larson, Judge

The People of the State of Colorado,

Appellee,

In the Interest of I.A.M., a Child,

and Concerning T.A.M.,

Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Ben Pearlman, County Attorney, Cheryl Koh-Sicotte, Assistant County
Attorney, Boulder, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant

¶ 1     In this dependency and neglect action, T.A.M. (mother) appeals the judgment terminating her parent-child legal relationship with I.A.M. (the child).  We affirm.

## I.     Background

¶ 2     The Boulder County Department of Housing and Human Services (Department) filed a petition in dependency or neglect shortly after the child's birth based on concerns regarding mother's mental health.  Mother admitted to the petition and the juvenile court adjudicated the child dependent or neglected.  The court also adopted a treatment plan for mother.

¶ 3     Later, the Department moved to terminate parental rights. After an evidentiary hearing, the court granted the motion.

## II.     Fitness Within a Reasonable Time

¶ 4     Mother's sole contention on appeal is that the juvenile court erred by finding that she could not become fit within a reasonable time.  We are not persuaded.

### A.     Applicable Law and Standard of Review

¶ 5     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied

with an appropriate court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025; *People in Interest of E.S.*, 2021 COA 79, ¶ 10.

¶ 6    An unfit parent is one whose conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of S.K.*, 2019 COA 36, ¶ 74. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions. *Id.* A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 7    In deciding whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct

or condition. *S.K.*, ¶ 75. A reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *People In Interest of A.N-B.*, 2019 COA 46, ¶ 34. What constitutes a reasonable time is fact specific and varies from case to case. *Id.* at ¶ 40. Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 8        Where, as here, a child is under six years old, the court must also consider the expedited permanency planning (EPP) provisions, which require the court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-705(5)(c), C.R.S. 2025.

¶ 9        Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12,

¶ 10. But we review de novo the juvenile court's legal conclusions based on those facts. *See id.* The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn therefrom are within the province of the juvenile court. *A.M.*, ¶ 15.

## B. Analysis

¶ 10 The juvenile court found that mother was unfit and that her conduct or condition was unlikely to change within a reasonable period of time. Specifically, the court found that there was "no indication" mother complied with her treatment plan and that it was not in the child's best interests to keep the case open any longer. The court further noted that this was an EPP case and that mother's "long-standing mental health and criminal issues" rendered her "unable to safely parent [the] child." The record supports the court's findings.

¶ 11 Mother was arrested shortly after the treatment plan was adopted. She was incarcerated for about six months. After being released, she remained out of custody for roughly two months leading up to the termination hearing.

¶ 12    The caseworker — who was qualified as an expert in casework with an emphasis in child protection — opined that mother had not reasonably complied with any of her treatment plan objectives. The caseworker did not believe mother could become fit within a reasonable time. The caseworker noted mother's parental rights to two older children were terminated in two prior dependency or neglect cases, and those cases involved the same mental health concerns that initiated the filing of the petition in this case. He also testified that, prior to mother's incarceration, she missed most family time sessions and did not attend the necessary training that would have allowed her to understand and care for her child's medical needs. Indeed, the child was born with significant medical needs that require that she have a gastronomy tube, participate in multiple therapies, and sleep with an oxygen pulsometer. Mother also did not engage in any treatment services or maintain contact with the Department. And, while incarcerated, mother's volatile behavior prevented her from participating in most virtual family time sessions or engaging in any of the treatment services available in the facility. Nevertheless, mother asserts that she "did not have the opportunity to engage in appropriate services" while

incarcerated and that her mental health needs "required additional time and specialized services" to allow her "a reasonable chance to improve her condition." Notably, she does not describe what specialized services she required. Regardless, even when she was out of custody, she did not engage in any aspect of her treatment plan. The caseworker testified that once released, mother failed to participate in her scheduled neuropsychological evaluation or engage in any mental health treatment. She refused to set up the phone the Department provided her with and did not maintain contact with the Department. Importantly, she attended only one family time session and generally "wasn't curious" about the child's well-being or progress nor did she appear to comprehend the child's significant medical needs.

¶ 13    On this record, we conclude that the juvenile court did not err by declining to give mother more time.

### III.   Disposition

¶ 14    The judgment is affirmed.

JUDGE HARRIS and JUDGE TOW concur.